And at this time we'll hear United States v. Chase. Good morning. May it please the court. My name is Melissa Toohey. I'm with the Office of the Federal Public Defender, appearing today on behalf of the defendant appellant, Mr. Brock Chase. Our appeal addresses the procedural and substantive reasonableness of the 50-year sentence Mr. Chase received for four counts of sexual exploitation of a minor. I would like to begin by addressing the denial of the downward departure that Mr. Chase sought based upon his extraordinary mental health condition. Firstly, I would like to address whether this court has jurisdiction to review the denial of the departure. The government in its brief contends that there is no authority to review refusals to depart, but we submit that this directly conflicts with the mandate in United States v. Booker and the case law that followed from this court, including United States v. Crosby, United States v. Brady, United States v. Fernandez, which was affirmed in United States v. Kane. It's our argument that the court committed procedural errors in selecting the sentence by applying the statute with respect to how the facts had to rise to a certain level in order for Mr. Chase to be entitled to receive that departure. You're saying we have jurisdiction to review the refusal to grant a further downward departure if the refusal to grant a further downward departure is based upon an error of law? Yes, Your Honor. Yes. And in that regard, we're saying that the error occurred when the court said that his conditions didn't rise to the level of the defendant's in United States v. Rivera and United States v. Brady. In Brady, I understand that the legal standard isn't necessarily set in stone, but I think the court was saying we can't say that you can't get the departure because it's not as shocking or as egregious as what happened to the defendant in United States v. Rowe. That's an error of law. Because I think this court specifically held that you can't say, well, his abuse isn't the same as those defendants and therefore he can't have the departure because under the facts of his case, his abuse is extraordinary in a different way given the fact that he was a person that was already suffering from mental health conditions including bipolar disorder, attention hyperactivity disorder, obsessive compulsive disorder and was being punished for not behaving in a way that people wanted him to, like his father reacting in anger that he couldn't just do well in school and being frustrated when his father was dealing with his own issues. What you're arguing is that the judge misunderstood his downward without reference to these other cases. Well, I think that, well, in either case I think this court can review it because it's still a misapplication of the law to say because what her statements were at sentencing was his facts haven't risen to the level of the defendants in those cases, which was specifically rejected in Brady that it has to match in order for the but in any event we're saying that the sentence is unreasonable for the failure to grant this departure, which in United States v. Brady the court did say that can be procedural error that we are to consider all guideline sentences or non-guideline sentences which includes the application or non-application of a departure, which in this case is what we're saying was erroneous because in this setting where he was dealing with all of these mental health conditions he then became a victim of sexual abuse being raped when he was 11 of course being too afraid to disclose that for fear of retribution as he had already experienced when he didn't behave in certain ways he would be punished. For example, when he was in school being placed in a closet for not behaving correctly the addendum to the PSR which fully documents the state of his mental condition at the age of 13 after the rapes occurred and during the time where he was on the internet performing sexual acts through a webcam being coerced by adults. All things that he didn't disclose until the offense currently and he never received treatment for that. Did the court credit these revelations? So that pertains to our substantive unreasonableness argument. Yes, the court did acknowledge that the court considered these and took those into consideration and I'm sure the court is saying, well, okay, he still didn't get a guideline sentence, he was sentenced to 50 years, therefore why does it matter? Well, that 50 years is not a guideline sentence. Correct. However the non-guideline sentence wasn't for those reasons. The non-guideline sentence the court imposed because the court wanted him to receive treatment in the most effective manner in order for him to come out of prison and to be the better happy positive person that he said that he wanted to be. The court wanted him to receive a non-guideline sentence in order to receive treatment so that he could meet those goals and then come out and be on lifetime supervision in order to fulfill those goals. Well, it's our position that 50 years is excessive because it can't meet those goals because he'll be 72 years old when he's released. At that point, he won't have his most ardent advocate, his mother who is a trained trauma nurse who understands his condition and now understands why her son at the age of 13 wanted to kill himself. All of these factors were missing from the equation when he was being treated for all of these conditions when he was a child because he was too fearful to disclose this fact. So, I think that this is a very harsh sentence for someone in this situation and who there was a letter submitted to the court from Dr. Berlin who noted that he could get treatment. He's a person that never had the ability to obtain treatment. When he comes out, how is that going to help society? He won't be able to get a job. He will have sex offender restrictions. Where will he live? He'll have computer restrictions. It will be very difficult for him to fulfill those purposes of the court stated person. That's the case for everybody who has this kind of offense. In this instance, it's particularly loathsome. Yes, Your Honor. I'm not at all discounting. I'm just saying that 50 years is very excessive in comparison to other cases where, for example, I know it was a recent summary order in United States versus Sawyer where 30 years was found unreasonable in a situation similar to this. In United States versus Brown, the defendant received a 60-year sentence, but there were multiple victims and more egregious conduct. I just think that it's not necessarily true that Mr. Chase can't rehabilitate himself. If the court wants him to receive treatment, isn't that for the purpose of addressing his problem, to rehabilitate himself, to come back into society and be a better person, which I don't think a 50-year sentence can satisfy that goal. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Michael Gadarian on behalf of the United States. Your Honor, I'd like to start my comments with respect to the 5H1.3 non-departure decision. I'm not sure that there's disagreement over what the standard is to hear defense counsel say it here, that there was a misunderstanding by the district court under the circumstances that it could depart, that the facts had to rise to match a particular set of facts in another case. I don't think that's what the district court said. I think if you go back to the transcript of the sentencing proceeding, the district court certainly cited other cases in which 5H1.3 departures were at issue, but I don't think it's a fair reading of her statements to say that she said, well, it must equal this for me to be able to depart. She cited relevant case law. She then went on to conclude in her discretion that the facts and circumstances here didn't warrant a departure under either of the two prongs. Insofar as this court were to review it for abuse of discretion, there was no abuse of discretion here. I think the court was well within its discretion first to make an assessment. Your argument is that the district court here not only perfectly apprehended its authority, but didn't rely exclusively on what the sentencings were in other cases. That's correct, Your Honor. I think that's a fair reading, or the most fair reading, of the record. The standards that this court has set out for situations where the district court would manifest a misunderstanding of its authority are not met here by what the district court said about its understanding of when a 5H1.3 departure would be appropriate. Doesn't it seem odd to talk in terms of therapies that will enable somebody to emerge from prison and then sentence them to 50 years? I don't think so, Your Honor. The district court obviously was presented with a scenario where it could have imposed life or not life. It chose a lengthy but non-life sentence in the sense that it's certainly possible that this defendant will be released. The fact that the district court hopes that he is rehabilitated in prison and then potentially also outside of prison, I don't think it's inconsistent. Certainly the district court was aware of the defendant's age, was aware of the length of the sentence. Insofar as the defense argument seems to suggest that a particular factor that they're focused on wasn't weighed sufficiently as opposed to the other purposes of sentencing, I think that's inconsistent with substantive reasonableness review. There were other purposes of this sentence. The district court talked about the other purposes of the sentence and the rehabilitation and treatment of the defendant is but one of those factors. I think it's not the approach to say, well, because the district court said X about treatment or rehabilitation, we will look at that in isolation from the other purposes of sentencing which were met in this case in which the district court articulated in this case. Is the length of his sentence one of the factors that has resulted in him not receiving treatment up to this point in the Bureau of Prisons? As I understand the record, he's in a facility now where he's not receiving treatment. I think Your Honor is correct, at least up until the point where the exchange of correspondence between the district court and probation is concerned. At first, I guess I would say I'm not sure that's part of the substantive reasonableness review, but insofar as it is, the defendant still may end up in a facility with treatment options. Obviously, the Bureau of Prisons has to make a lot of determinations about where prisoners are placed in the course of its execution of its function. Just briefly, Your Honors, with respect to the cases cited by counsel in her discussion, I think Sawyer is obviously a different case. In addition to being a non-published decision, the conduct here, which I won't describe in detail, is significantly more egregious than the conduct was in Sawyer. The background, insofar as the background was relevant to this court's decision in Sawyer, is also different, as the court noted. With respect to Brown, although it's obviously true that there were more victims in Brown than there are here, that distinction, I think, is something that the court ought to be cautious about relying on to say that a sentence here is substantively unreasonable because this victim was victimized multiple times in an egregious fashion. I think the case law shows that sentences, at least of a similar length to the one imposed here, were substantively reasonable. Unless there are further questions, we'll rest on the papers. Thank you, Your Honors. You have reserved a minute to rebuttal, Ms. Terry. We'll hear you now. Thank you, Your Honor. With respect to Sawyer, in our reply brief, we did concede that our facts are more egregious than in Sawyer, but argued that possibly if 30 years was too much for Jesse Sawyer, maybe that is sufficient for Mr. Chase. I would just like to add one final quote from the court's recent decision on April 17, 2017 in the case of United States v. Jenkins. I know that was merely a possession and receipt of child pornography case, but I feel that these statements are relevant to the current issue. Additional months in prison are not simply numbers. Those months have exceptionally severe consequences for the incarcerated individual. They also have consequences both for society, which bears the direct and indirect costs of incarceration, and for the administration of justice, which must be at its best when, as here, the stakes are their highest. I would like to end with that, Your Honors. Thank you. Thank you both. We'll reserve decision. That's the last case on calendar. Please adjourn court.